**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MONICA HUDSON,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-25-2481** |
| **WASHINGTON GAS LIGHT COMPANY,** | * | |
| **Defendant.** | * | |

## MEMORANDUM OPINION

Monica Hudson claims her former employer Washington Gas Light Company ("WGLC") discriminated against her because of her race and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and because of her age, in violation of the Age and Discrimination in Employment Act of 1976 ("ADEA"), 29 U.S.C. § 621, *et seq.* Hudson also asserts WGLC discriminated against her because of her race, sex, and age, in violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601 - 20-609.

WGLC moved to dismiss Hudson's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court converts the motion to dismiss to a summary judgment motion pursuant to Federal Rule of Civil Procedure 12(d) and grants summary judgment on the Title VII and ADEA claims in favor of WGLC. The Court declines to exercise supplemental jurisdiction over the MFEPA claim and dismisses the claim without prejudice.

## I. Background

### A. Allegations of Discrimination

Hudson alleges the following facts. She is a Black female born in 1967. ECF 4, ¶¶ 15–17. WGLC hired her in 1995. *Id.* ¶ 18. At the time of the alleged discriminatory actions, Hudson was

either a Payment Processing Operator, a Teller, a Payroll Processing Jr. Specialist, a General Ledger Specialist, a Financial Systems Analyst, or a Senior Financial Systems Analyst. *Id.* ¶ 11.

Hudson began as a Payment Processing Operator and, in or around 1999, was promoted to General Ledger Specialist. *Id.* ¶¶ 18–19. Hudson assumed duties beyond those assigned to employees with her title and paygrade. *Id.* ¶ 20. Despite her exceptional performance, Hudson consistently received a rating of "meets requirements" rather than "exceeds requirements" in year-end evaluations. *Id.* ¶ 21. She repeatedly requested a title adjustment and/or promotion to the role of Senior General Ledger Specialist, but her direct manager at the time, Drew Deering, a younger white male, denied or ignored her requests. *Id.* ¶ 22.

In or around 2010, WGLC promoted Hudson to the role of Senior Financial Systems Analyst. *Id.* ¶ 23. Again, she undertook duties beyond her title and paygrade, including the duties of younger white male colleagues. *Id.* ¶¶ 24–26. Again, she was repeatedly denied requests for promotions and salary increases in favor of other employees who were younger, non-Black, and/or male. *Id.* ¶ 27. And she still received a rating of "meets requirements" rather than "exceeds requirements" in year-end evaluations. *Id.* ¶ 28. In or around 2015, Hudson applied for the role of Supervisor, Financial Systems and Data Analytics, but she was passed over in favor of a Persian man who was 17 years her junior. *Id.* ¶¶ 29–30.

In or around 2018, Scott McIlvenna, a younger white male who was Hudson's direct supervisor at the time, denied her request to attend a conference and allowed Kevin Scallan, a white male, to attend. *Id.* ¶¶ 25, 31–33. As a result of his attendance at the conference, Scallan earned a certification that boosted his professional credentials. *Id.* ¶ 33.

In or around April 2024, WGLC engaged in a reduction in force, terminating dozens of employees. *Id.* ¶ 35. On April 17, WGLC terminated Hudson two years shy of her eligibility to

receive a full pension. *Id.* ¶ 37. WGLC's unwillingness to pay her full pension was one of the factors that motivated its decision to terminate Hudson. *Id.* ¶ 38. Hudson was the oldest member of her team and one of the few Black members to be terminated. *Id.* ¶¶ 40–41. WGLC did not terminate younger employees because it wanted to reduce the age and salary cost of its workforce. *Id.* ¶ 39. WGLC offered Hudson a lesser severance package than it offered other terminated employees with shorter tenures. *Id.* ¶ 42. At the time of her termination, Hudson had worked for WGLC for almost 30 years and was one of the most tenured employees. *Id.* ¶ 10.

On June 30, 2025, Hudson filed a complaint against WGLC in the Circuit Court for Montgomery County, Maryland, claiming WGLC discriminated against her based on her race, sex, and age when it gave her negative performance evaluations, refused to promote her, denied her valuable training opportunities, and terminated her. ECF 4. Hudson asserts a Title VII race discrimination claim (Count I), *id.* ¶¶ 43–53, a Title VII sex discrimination claim (Count II), *id.* ¶¶ 54–65, an ADEA age discrimination claim (Count III), *id.* ¶¶ 66–75, and an MFEPA race, sex, and age discrimination claim (Count IV), *id.* ¶¶ 76–85. Hudson seeks compensatory damages for lost and future wages, her full pension and benefits, and unspecified equitable, declaratory, and injunctive relief. *Id.* at 11–12. On July 29, 2025, WGLC removed the action to this Court. ECF 1, ¶¶ 5–9.

**B. Motion to Dismiss**

On January 9, 2026, WGLC moved to dismiss Hudson's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF 16. WGLC argued that Hudson's complaint should be dismissed because she did not file a charge with the Equal Employment Opportunity Office ("EEOC") within 300 days of the alleged discrimination and because she did not file her complaint within 90 days of receiving her right-to-sue notice from the EEOC. ECF 16-1. Hudson opposed

the motion, ECF 19, and WGLC replied, ECF 20. Hudson attached to her opposition, among other things, her declaration explaining when she received the right-to-sue notice, ECF 19-3, and her April 1, 2025 email exchange with her counsel regarding the right-to-sue notice, ECF 19-4. WGLC attached to its reply, among other things, emails from the EEOC to Hudson's counsel, ECF 20-4, and an "action log" for an EEOC-conducted "pre-determination interview" with Hudson and her counsel, ECF 20-5.

Upon review of the motion to dismiss briefing and the exhibits submitted by both parties, the Court issued an order on May 19, 2026, putting the parties on notice that the Court intended to treat the motion to dismiss as a summary judgement motion because matters outside the pleadings have been presented to the Court. ECF 22 (citing Fed. R. Civ. P. 12(d)). Specifically, the Court cited evidence that Hudson's counsel received an email from the EEOC on March 26, 2025 with a hyperlink to the right-to-sue notice. The Court stated:

> If the EEOC emailed Hudson's counsel a link to the right to sue notice on March 26, 2025, that date commenced the 90-day filing period. *See, e.g.*, *Abraham v. Trident Vantage Sys., LLC*, No. TDC-23-3195, 2024 WL 4607967, at *4 (D. Md. Oct. 28, 2024) (collecting cases and finding that "in the email context, the 90-day period is properly deemed to have commenced on the date that the EEOC sends the Notice, or a link to the Notice, by email to the plaintiff or the plaintiff's counsel"); *Garcia v. Balt. Police Dep't*, No. BPG-22-1423, 2023 WL 3043953, at *3 (D. Md. Apr. 21, 2023) (holding that the date the EEOC sends an email with directions to access a right to sue letter commences the 90-day filing period). And if the 90-day filing period began on March 26, 2025, this lawsuit, filed 96 days later on June [3]0, 2025, was filed too late.

*Id.* The Court offered Hudson the opportunity to present any additional evidence by June 2. *Id.* Hudson responded to the order, but she did not submit any additional evidence. ECF 23.

**C. Conversion of Motion to Dismiss to Motion for Summary Judgment**

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc). First,

"all parties [must] be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment." *Id.* (citation modified). Second, "the parties [must] be afforded a reasonable opportunity for discovery." *Id.* (citation modified).

The first requirement for conversion is satisfied. The Court notified the parties in the May 19 Order that it intended to convert the motion to dismiss into a motion for summary judgment because the parties submitted materials outside the pleadings. The Court will not exclude the materials because they are relevant and no party has objected to the Court's consideration of them.

The second requirement—a reasonable opportunity for discovery—also has been satisfied. In response to the Court's May 19 Order, Hudson asserted that she "should be allowed the vehicle of discovery to further develop and elaborate on the evidence that proves her claims of race, age, and gender discrimination." ECF 23, at 4. But whether Hudson should get discovery on her discrimination claims is not at issue here. WGLC moved to dismiss Hudson's claims because Hudson filed them too late, not because she cannot prove discrimination. And the Court's notice to the parties explained that the Court was focusing on evidence of timeliness, not evidence of discrimination. Yet, despite the Court's invitation for a response to the evidence that Hudson filed her lawsuit too late, Hudson did not submit any additional evidence or suggest she needs additional discovery to prove she timely filed suit. If Hudson needed additional discovery to adequately oppose summary judgment on timeliness grounds, she should have submitted a Rule 56(d) affidavit stating the "specifi[c] reasons" that she "cannot present facts essential to justify [her] opposition," Fed. R. Civ. P. 56(d), which is "the proper course" when opposing Rule 12(d) conversion, *see Greater Balt.*, 721 F.3d at 281 (citation modified). No Rule 56(d) affidavit was filed. Because Hudson has not shown that discovery is necessary to oppose summary judgment on

the grounds that she filed her lawsuit too late, there is no need for additional discovery before Rule 12(d) conversion.

Pursuant to Federal Rule of Civil Procedure 12(d), the Court converts WGLC's motion to dismiss to a motion for summary judgment.

**D. Undisputed Material Facts**

These undisputed facts are material to whether Hudson filed her lawsuit on time.

Hudson filed a Charge of Discrimination with the EEOC on March 11, 2025. ECF 4, ¶ 5.[1] On March 26, 2025, the EEOC issued a Dismissal and Notice of Rights ("right-to-sue notice" or "notice") regarding Hudson's charge. *Id.* at 15–16. The right-to-sue notice is addressed to Hudson, and the signature block says "Digitally Signed By: Casey Callahan 03/26/25." *Id*. at 15. The notice provides:

> This is the official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against [WGLC] on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice**. Receipt generally occurs on the date that you (or your representative) view this document.

*Id.* An enclosure with the right-to-sue notice, titled "Information Related to Filing Suit Under the Laws Enforced by the EEOC," states in relevant part: "If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail." *Id*. at 17.

On March 26, 2025, the EEOC sent an email to Hudson's counsel at ncozzillio@fedattorney.com, informing counsel that "[a] new document was added to EEOC

[1] WGLC does not dispute Hudson's allegation that she filed her EEOC charge on March 11, 2025. In fact, WGLC relies on that date to argue she filed the charge too late. *See* ECF 16-1, at 9; ECF 20, at 7. Thus, for purposes of this summary judgment motion, the Court assumes that Hudson filed her EEOC charge on March 11, 2025.

Charge No. 531-2025-02580, Monica Hudson v. WASHINGTON GAS" and providing a hyperlink to the EEOC Public Portal to access the document. ECF 20-4, at 3.

The EEOC's action log includes two entries dated March 26, 2025. One entry states: "CP's [charging party's] legal representative was called on 03/26/2025 at 10:15am. No answer, so a voicemail was left to call the office back." ECF 20-5, at 3. The second entry states:

> PDI [pre-determination interview] conducted 03/23/2025: Explained to CPLR [charging party's legal representative] the charge has been filed untimely . . . Counseled that it is still your right to file it if you choose to do so. If you do choose to file a charge an issuance of the Notice of Right to Sue will [be] uploaded to the portal for you to download and print. You will have 90 days to file a lawsuit in federal court. . . .
>
> CP [charging party] was counseled on issuance of NRTS through the portal and need to log in and download document, right to file lawsuit against R [respondent] within 90 days of receipt.

*Id.* at 2.

On April 3, the EEOC sent an email to Hudson's counsel at ncozzillio@fedattorney.com. *Id*. The email's subject line was "REMINDER: Important Document Available for EEOC Charge 531-2025-02580." *Id*. The email stated: "[The] EEOC has made a decision regarding charge number 531-2025-02580 [Monica Hudson v. WASHINGTON GAS]. It is very important that you download and retain a copy of this document. You may review this decision by logging into the EEOC Public Portal." ECF 20-4, at 2. The email provided a hyperlink to the EEOC Public Portal to access the document. *Id.* at 2–3.

Meanwhile, on April 1, 2025, Hudson first accessed the right-to-sue notice through the EEOC Public Portal. ECF 19-3, ¶ 13. Later that day, Hudson emailed her counsel at ncozzillio@fedattorney.com about the right-to-sue notice Hudson had accessed on the portal and inquired about next steps. ECF 19-4, at 3–4. In response, Hudson's counsel stated that she had not

received the notice and requested that Hudson forward it to her. *Id.* at 2. Hudson forwarded the notice to her counsel later that day. *Id.*; ECF 19-3, ¶ 15.

The EEOC mailed a letter to Hudson's counsel, dated May 13, 2025, enclosing the right-to-sue notice. ECF 4, at 14–19. The May 13 letter states:

> The United States Equal Employment Opportunity Commission (EEOC) issued the enclosed Dismissal and Notice of Rights (Notice) in the above-referenced charge on the date reflected thereon. Specifically, on that date, EEOC sent you an email notification that EEOC had made a decision regarding the above-referenced charge and advised you to download a copy of the decision document from the Portal. Our records indicate you have not downloaded the Notice from the Portal. For your convenience, a copy of the Notice is enclosed with this letter.

*Id.* at 14. The letter also advised that if Hudson "wants to pursue this matter further in court," she "must file a lawsuit within 90 days of the date [she] receive[d] the Notice." *Id.*[2]

**III. Standard of Review**

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a

[2] It is undisputed that Hudson herself never received an "email notification from the EEOC that the Right to Sue Letter had been issued," ECF 19-3, ¶ 13, and that Hudson has not personally received a copy of the notice from the EEOC via email or U.S. mail, *id.* ¶ 16. These undisputed facts are immaterial. Hudson was represented by counsel during the EEOC proceedings, and notice to her counsel is deemed notice to her. *See Harper v. Burgess*, 701 F.2d 29, 30 (4th Cir. 1983).

verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (citing *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (citation modified); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, the court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (citation modified).

## IV. Discussion

WGLC is entitled to summary judgment on Hudson's Title VII and ADEA claims because Hudson did not file these claims on time.[3] The Court declines to exercise supplemental jurisdiction over the remaining state law claim.

### A. Title VII and ADEA Claims

Before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC within 300 days of the alleged discriminatory acts. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b), (f); 29 U.S.C. § 633a(d)). If, after receiving a charge, the EEOC concludes that the charge was not timely filed or the claimant has not adequately alleged discrimination, the EEOC must dismiss the charge and notify the claimant of her right to sue in court. 42 U.S.C. § 2000e-5(b), (f)(1). A Title VII or ADEA plaintiff must bring suit within 90 days of receipt of a right-to-sue letter from the EEOC. *See*

---

[3] WGLC also argues it is entitled to summary judgment because Hudson did not file her EEOC complaint within 300 days of the discriminatory acts. ECF 16-1, at 7–10. Hudson disputes this. *See* ECF 19, at 8–16; ECF 23, at 5–10. The Court need not reach this question because even if Hudson filed her EEOC charge on time, Hudson filed her Title VII and ADEA claims too late.

*Thomas v. EOTech, LLC*, 169 F.4th 259, 264 (4th Cir. 2026); 42 U.S.C. § 2000e-5(f)(1) (requiring Title VII plaintiffs to file suit "within ninety days after the giving of [a right-to-sue] notice"); 29 U.S.C. § 626(e) (requiring ADEA plaintiffs to file suit "within 90 days after the date of the receipt of [a right-to-sue] notice"). The EEOC may send the right-to-sue letter through email. *See* 29 C.F.R. §§ 1601.28(a)(1), 1601.3(b).[4]

Here, the parties agree that the 90-day clock for filing suit started ticking on the day that Hudson received the right-to-sue notice. The parties dispute when Hudson received the notice. Hudson argues she received the notice on April 1, 2025, when she herself first accessed it through the EEOC Public Portal. WGLC responds that Hudson, through her counsel, received the notice six days earlier, on March 26, 2025, when the EEOC emailed counsel a link to the notice in the EEOC Public Portal. Hudson counters that her counsel did not receive the notice until counsel received it through the U.S. mail in mid-May. Hudson further counters that, even if counsel had received the email on the day the EEOC sent it, the email provided insufficient notice because the email itself did not inform counsel that the new document uploaded to the portal was the right-to-sue notice and the right-to-sue notice was not attached to the email. If Hudson is correct, she filed her Title VII and ADEA claims on time. If WGLC is correct, Hudson filed them six days late. For the reasons explained below, WGLC is correct; Hudson filed her federal claims out of time.

The Fourth Circuit has not decided when an e-mailed right-to-sue notice is deemed received for purposes of starting the 90-day filing clock. Other circuits have.

---

[4] When the EEOC sends a right-to-sue notice by mail and the delivery date is unknown, "[t]he presumed date of receipt" is three days after it is "issued." *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 & n.1 (1984) (applying Fed. R. Civ. P. 6(e), now 6(d)). When the EEOC emails the notice, the presumed date of receipt is the date the email was sent. *See* Fed. R. Civ. P. 6(d) & advisory committee's note to 2016 amendment.

The Eighth Circuit recently held that the plaintiff received notice of her right to sue on the day that "the EEOC first emailed her lawyer the link to her right-to-sue letter in the Public Portal." *McDonald v. St. Louis Univ.*, 109 F.4th 1068, 1071 (8th Cir. 2024). The email stated "a new document was added to" the plaintiff's case file and provided a link to access the document in the EEOC Public Portal. *Id.* at 1070. The lawyer acknowledged reading the email, "but because he lost the password to the Public Portal, he didn't read the right-to-sue letter." *Id.* The *McDonald* court rejected the plaintiff's argument that an e-mail that did not identify the "new" document by name was not "actual and effective notification of her right to sue." *Id*. at 1071 (citation modified). The court found that it did not matter that the email did not specify what the "new" document was because the right-to-sue letter itself provided adequate notice of the plaintiff's right to sue. *Id*. The court also rejected the plaintiff's argument that the notice was not received until the day her lawyer received it as an attachment to an EEOC email. *Id*. Ultimately, the court concluded that the Title VII claims were time-barred because the plaintiff filed suit more than 90 days after the EEOC emailed her lawyer a link to the right-to-sue notice. *Id*.

The First Circuit recently took a different approach. In *García-Gesualdo v. Honeywell Aerospace of P.R., Inc.*, 135 F.4th 10 (1st Cir. 2025), the EEOC emailed the plaintiff's counsel on March 29 that a "new document" had been added to the plaintiff's case file and provided a hyperlink to the EEOC Public Portal to access the document. *Id.* at 13. Eight days later, in an April 6 email, the EEOC notified counsel that an "Important Document" was available, that the "EEOC ha[d] made a decision regarding [García-Gesualdo's] EEOC Charge," and that counsel could review the document in the EEOC Public Portal. *Id.* The portal was malfunctioning, and as a result, counsel could not access the document until the EEOC, at counsel's request, emailed him a PDF of the document on April 11. *Id.* at 14. The plaintiff filed suit "100 days after the March 29 email,

92 days after the April 6 email, and 87 days after the April 11 email." *Id.* The district court dismissed the lawsuit as untimely. *Id.* at 15.

On appeal, the First Circuit reversed. At the outset, the court observed that "the parties do not dispute that the right-to-sue letter itself provided sufficient information to effectuate notice of the EEOC's decision and García-Gesualdo's rights." *Id*. at 17. The court focused its attention on whether the "March 29 email . . . or the April 6 email . . . provided sufficient information to constitute notice of García-Gesualdo's right to sue." *Id.* It concluded that the March 29 email did not begin the 90-day filing period because it "merely note[d] the existence of a 'new' document without attaching the new document to the email" and did not provide notice that the charge had been dismissed or otherwise resolved. *Id.* at 18. Nor did the April 6 email begin the filing clock because it merely said the "EEOC has reached a decision;" it did not provide "any indication that the EEOC's processes had been terminated." *Id*. Neither email triggered the 90-day filing period because neither email notified the claimant "that the EEOC has either 'dismissed the charge or . . . failed to address the employee's grievance (by reaching a negotiated settlement or by commencing litigation on her behalf).'" *Id*. (quoting *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005); citing 42 U.S.C. § 2000e-5(f)(1)). The court held that "for an email that does not attach the right-to-sue letter itself to provide notice, it must indicate without ambiguity that the EEOC has reached a final decision and that the claimant has ninety days to bring suit if they so wish." *Id.* (citation modified). The court declined to follow *McDonald* because its rule "puts an unnecessary burden on claimants, essentially requiring them to immediately follow a link, log into the online portal, and download a

document without having received any indication as to the nature or import of the newly available document." *Id.*[5]

Viewing *McDonald* and *García-Gesualdo* through the lens of Fourth Circuit law, the Court predicts the Fourth Circuit would follow *McDonald*, not *García-Gesualdo*.

The Fourth Circuit follows the delivery rule to determine when the 90-day filing clock starts. In the context of notices sent by mail, the Fourth Circuit has held that the date the Postal Service delivered to the claimant's home either an envelope with the right-to-sue notice or a post office notice that a letter was available for pick-up—not the date the claimant actually received or opened the envelope—is the date the notice was received and the 90-day filing period starts. *See Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987) (holding the 90-day limitations period begins when the right-to-sue letter arrives at the plaintiff's home, not when the plaintiff opens it); *Watts-Means v. Prince George's Fam. Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993) (holding the 90-day limitations period is triggered when "the Postal Service delivers notice to a plaintiff that the right-to-sue letter is available for pickup, and not when the letter is actually picked up"). Were the rule otherwise, claimants could enjoy an "open-ended time extension, subject to

[5] *McDonald* and *García-Gesualdo* discuss *Lax v. Mayorkas*, 20 F.4th 1178 (7th Cir. 2021). There, the Seventh Circuit held that the 90-day filing period commenced on the day the plaintiff received, opened, and read an email from the EEOC with the right-to-sue letter attached. *Id.* at 1181–82. The subject line of the email was "Final Action for Lax, Brian[.]" *Id.* at 1180. It did not matter that Lax "did not read or open the attachment" because his "mere receipt of the email commence[d] the filing window." *Id.* at 1182. In reaching this conclusion, the Seventh Circuit relied on circuit precedent that "receiving the notice via traditional mail, without opening or reading that notice, is sufficient to trigger the beginning of the filing period." *Id*. Whereas the email in *Lax* indicated in the subject line that there had been a "Final Action" and attached the right-to-sue notice, the email in *McDonald* merely stated a "new document" had been uploaded to the EEOC Public Portal and did not attach the notice. Those distinctions did not make a difference to the *McDonald* court, 109 F.4th at 1071, but they did to the *García-Gesualdo* court. The First Circuit did not "agree that *Lax*'s principle extends to an email that merely notes the existence of a 'new' document without attaching the new document to the email." *García-Gesualdo v. Honeywell Aerospace of P.R., Inc.*, 135 F.4th 10, 18 (1st Cir. 2025).

manipulation at will," which would contravene Congress's intent "to require claimants to act expeditiously, without unnecessary delay" after receiving notice of a right-to-sue letter. *Harvey*, 813 F.2d at 654.

The Fourth Circuit's decision in *Watts-Means* aligns more closely with *McDonald* than with *García-Gesualdo*. In *Watts-Means*, the 90-day clock began on the day the Postal Service delivered "a slip of paper" to the plaintiff's home notifying her that she should pick up a certified letter at the post office, even though the slip did not say who sent the letter or what the letter was.[6] 7 F.3d at 41–42. Similarly, in *McDonald*, the 90-day clock began on the day the EEOC emailed counsel a link to a new document in his client's file, even though the email did not state what the document was and the document was not attached. 109 F.4th at 1071. Just as the Fourth Circuit in *Watts-Means* did not impose a requirement that the post office's notice inform the recipient that the letter ready for pickup was from the EEOC or that it contained the right-to-sue notice, the Eighth Circuit in *McDonald* did not impose a requirement that the email itself inform the recipient that the EEOC had made a final decision. *McDonald* is a natural extension of *Watts-Means.*

*García-Gesualdo*, on the other hand, cannot be squared with *Watts-Means* or *Harvey*. Whereas in *García-Gesualdo*, the 90-day filing clock was triggered by the receipt of an email only when the email itself "indicate[d] without ambiguity that the EEOC has reached a final decision and that the claimant has ninety days to bring suit if they so wish," 135 F.4th at 18 (citation modified), in *Watts-Means*, a mere "slip of paper indicating that [the plaintiff] should pick up the letter at the post office" was sufficient to trigger the filing period, 7 F.3d at 41. And now, 33 years after *Watts-Means*, in the age of e-mailed right-to-sue notices, the recipient always knows the

---

[6] Although the plaintiff in *Watts-Means* "suspected that the letter was from the EEOC," the notice from the post office did not identify the sender or indicate what the letter was. *Watts-Means v. Prince George's Fam. Crisis Ctr.*,7 F.3d 40, 41 (4th Cir. 1993); *see also id.* at 42 n.1.

sender is the EEOC—that's more than the "slip of paper" in *Watts-Means* revealed. Additionally, whereas in *García-Gesualdo*, the First Circuit did not want to impose "an unnecessary burden on claimants, essentially requiring them to immediately follow a link, log into the online portal, and download a document without having received any indication as to the nature or import of the newly available document," 135 F.4th at 18, the Fourth Circuit obligates "claimants to act expeditiously, without unnecessary delay" upon notice of correspondence from the EEOC, *Harvey*, 813 F.2d at 654. In accordance with *Harvey* and *Watts-Means*, this Court holds, as the Eighth Circuit held in *McDonald*, that the day the EEOC emails counsel that a "new document" has been uploaded to their client's file and includes a hyperlink to access the document in the EEOC Public Portal (and, of course, the document is the right-to-sue notice) is the day the right-to-sue notice is deemed received and the 90-day filing period begins.

Applying *Harvey* and *Watts-Means* to the digital age, the Court finds the following. Just as the delivery rule governs receipt of right-to-sue letters sent via mail, it governs receipt of right-to-sue letters sent via email. The date that an email with a link to the right-to-sue notice arrives in the claimant's inbox is the date the notice is deemed received—regardless of whether or when the claimant opens the email or clicks on the link to the letter. Moreover, just as a Postal Service notice of a certified letter awaiting pick-up does not need to describe the contents of the letter to trigger the 90-day filing period, the EEOC email does not need to identify the "new document" as the right-to-sue notice or attach the right-to-sue notice to trigger the filing period.[7]

Further, the Court holds that, just as a rebuttable presumption of delivery applies to properly mailed notices, *see Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1126 (9th

[7] These findings, of course, apply to EEOC emails sent to a claimant's counsel. *See Harper*, 701 F.2d at 30.

Cir. 2007) (collecting cases); *Prosa v. Austin*, No. CV ELH-20-3015, 2022 WL 394465, at *17 (D. Md. Feb. 8, 2022), a rebuttable presumption of delivery applies to properly emailed notices, *see Am. Boat Co. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005) (holding "a presumption of delivery should apply to e-mails"); *Gary v. Ga. Dep't of Def.*, No. 1:23-CV-3008-MHC-JEM, 2025 WL 2023010, at *7 (N.D. Ga. July 16, 2025) (finding "rebuttable presumption [of delivery] applies to emails properly addressed"); *Eyth v. Spectrum Charter Commc'ns, Inc.*, No. 8:23-CV-1878-CEH-TGW, 2024 WL 1833011, at *7 (M.D. Fla. Apr. 26, 2024) (applying rebuttable presumption that email was received on the date it was sent); *Jacobs v. Walmart Inc.*, No. CV RDB-22-2666, 2023 WL 4532822, at *5–6 (D. Md. July 13, 2023) (applying rebuttable presumption of delivery to emailed EEOC notice).

Proof of proper mailing—or in this case, emailing—is sufficient to create this presumption of delivery. *See Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009) ("[T]he rule is well settled that proof that a letter properly directed was placed in a post office, creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." (quoting *Hagner v. United States,* 285 U.S. 427, 430 (1932))); *Corbin v. Affiliated Comput. Servs., Inc.*, No. 6:13-CV-180-ORL-36, 2013 WL 3804862, at *6 (M.D. Fla. July 19, 2013) ("When a defendant has produced evidence showing that it sent an item properly mailed, or in this case emailed, there arises a rebuttable presumption that it was received by the addressee."). To prove an email was properly sent, the proponent must produce the email and establish that it was directed to the recipient's correct email address. *Compare Eyth*, 2024 WL 1833011, at *7 (finding the defendant adequately proved proper emailing when they produced "a copy of the email sent to what is purportedly Plaintiff's company email address"), *with Hankerson v. Five Star Quality Care-FL, LLC*, No. 16-62596-CV, 2017 WL 2930581, at *2 (S.D. Fla. July 7, 2017)

(finding the corporate defendant failed to prove proper emailing when it sent a companywide email to employees and the plaintiff did not have a company email address at the time). There is no requirement, as Hudson suggests, ECF 23, at 11–12, that the proponent of the email submit a "delivery notification" to prove the email was received. Once the defendant submits evidence of a properly mailed or emailed right-to-sue notice, the burden shifts to the plaintiff to rebut the presumption of delivery with evidence that they did not receive the notice. *See, e.g.*, *Payan*, 495 F.3d at 1126 ("[T]o rebut a mailing presumption, *the plaintiff* must show that she did not receive the EEOC's right-to-sue letter in the ordinary course." (emphasis added)); *Am. Boat Co.*, 418 F.3d at 914 (finding that the plaintiff-appellant was entitled to an evidentiary hearing on whether they received the emailed notice, because they introduced evidence that (1) the email system was new and subject to "glitches," (2) "the system was not operating as intended" at the relevant time, and (3) a member of opposing counsel indicated that she had not received the emailed notice either).

Here, WGLC has submitted evidence that the March 26, 2025 EEOC email was properly emailed to Hudson's counsel. The email is in the record. ECF 20-4, at 3. On March 26, the EEOC emailed Hudson's counsel at "ncozzillio@fedattorney.com" to notify her that "[a] new document was added" to Hudson's file. *Id.* There can be no dispute that the "new document" referenced in the March 26 email was the right-to-sue notice. The notice, like the email, was dated March 26, 2025, and the notice was digitally signed on March 26, 2025. In case there was any doubt what the "new document" was, that doubt was dispelled in the EEOC's May 13, 2025 follow-up letter to counsel. There, the EEOC informed counsel that it had issued the right-to-sue notice, a copy of which was enclosed, "on the date reflected thereon" and "on that date, EEOC sent [counsel] an email notification that EEOC had made a decision regarding the . . . charge." ECF 4, at 14. The enclosed notice stated it was "Issued on: 03/26/2025." *Id.* at 15. This evidence shows that the

EEOC properly emailed Hudson's counsel the right-to-sue notice on March 26.[8] Thus, there is a rebuttable presumption that Hudson received the email and the notice on that day.

Hudson has not offered any evidence to rebut the presumption that the March 26 email was properly sent. Hudson does not, for instance, submit evidence that her counsel's email system was malfunctioning at the time. Nor does Hudson submit evidence that the EEOC sent the notice to the wrong email address. Nor could she. The email address to which the EEOC sent the March 26 email is the same email address counsel used to email with Hudson less than a week later, ECF 19-4, and the same email address on file with the Court.

Hudson argues that the follow-up notifications from the EEOC, sent on April 3 and May 13, show that the March 26 email was not delivered to her counsel. Hudson reasons that "the EEOC only automatically sent follow-up notifications . . . due to the fact that the document had **not** been received . . . nor was it accessed *via* the EEOC Public Portal[.]" ECF 23, at 11. But neither of the EEOC's follow-up notifications remotely suggest that the March 26 email was not properly emailed to counsel. The April 3 email—titled "REMINDER: Important Document Available for EEOC Charge 531-2025-02580"—advised counsel that the "EEOC has made a decision regarding charge number 531-2025-02580 [Monica Hudson v. WASHINGTON GAS]." ECF 20-4, at 2. Counsel also was advised that it was "very important that [she] download and retain a copy of this document" and that counsel could "review this decision by logging into the EEOC Public Portal." *Id*. The May 13 letter made clear why the EEOC sent counsel reminder messages. The letter stated that EEOC "records indicate you have not downloaded the Notice from the Portal." ECF 4, at 14. These follow-up notifications are not evidence, as Hudson argues, that the EEOC did not properly

[8] Hudson speculates that the "new document" referenced in the March 26 email was not the right-to-sue notice and that the EEOC first emailed her the notice on April 3. *See* ECF 23, at 11. No reasonable juror could reach that conclusion in light of the undisputed record evidence.

email counsel on March 26. Rather, they are evidence that counsel had not yet downloaded the right-to-sue letter after having been notified about it. As discussed above, it does not matter when counsel downloaded the notice from the EEOC Public Portal; it matters when counsel received the notice. And here, counsel is deemed to have received the notice on March 26, the day it was properly emailed to her—regardless of whether or when counsel accessed the document. None of the EEOC follow-up notifications to counsel rebut the presumption that the March 26 email was properly sent.

Hudson submitted her own evidence to support her claim that her counsel did not receive the right-to-sue notice. In an April 1, 2025 email, counsel asked Hudson, "Can you send me the document that was sent to you? I did not receive it." ECF 19-4, at 3. But counsel's denial of receipt of the notice, in an email exchange with her client, does not rebut the presumption that the email was properly sent to and arrived in counsel's inbox on March 26. Even if counsel had submitted a sworn statement that she did not receive the email, a mere denial of receipt, without more, is insufficient to rebut the presumption that the email was received on the day it was sent. *See, e.g.*, *Eyth*, 2024 WL 1833011, at *7 (finding the plaintiff's "unsupported affidavit stating he did not receive an email, in the face of affirmative evidence that it was sent to him, is insufficient to rebut the presumption of receipt or to create a genuine issue of fact"); *Couch v. AT & T Servs.*, No. 13-CV-2004 DRH GRB, 2014 WL 7424093, at *6 (E.D.N.Y. Dec. 31, 2014) ("[M]ere denials of receipt are insufficient to rebut the presumption that the emails were received."); *Abdullah v. Am. Express Co.*, No. 3:12-cv-1037-J-34MCR, 2012 WL 6867675, at *4–5 (M.D. Fla. Dec. 19, 2012) (finding the plaintiff's denial of receipt of an email containing notice of an arbitration agreement was insufficient to rebut the presumption that he had received the email), *report & recommendation adopted*, 2013 WL 173225 (M.D. Fla. Jan. 16, 2013); *Corbin*, 2013 WL 3804862,

at *6 ("This presumption [of receipt of an email] cannot be overcome merely by stating in an affidavit that the plaintiff never received the [emailed] agreement.").[9]

Hudson is deemed to have received the right-to-sue notice on March 26, 2025—the day the EEOC sent her counsel an email that a "new document" had been added to her client's file and could be accessed through a link to the EEOC Public Portal. The March 26 email triggered the 90-day filing clock. *See Watts-Means*, 7 F.3d at 42; *McDonald*, 109 F.4th at 1071. Hudson did not file this lawsuit until June 30—96 days later. Hudson filed her Title VII and ADEA claims too late.[10]

Under certain circumstances, the 90-day limitations period may be subject to equitable tolling. *See Watts-Means*, 7 F.3d at 42. Hudson does not argue that equitable tolling applies. Even if she had, the Fourth Circuit has declined to equitably toll the 90-day filing period when the plaintiff still had 84 or 85 days to file her lawsuit after she received actual notice. *See Harvey*, 813

---

[9] Hudson does not argue that the statements about "receipt" in the March 26 right-to-sue notice or its enclosure support her position that the 90-day limitations period began when she first viewed the notice on the EEOC Public Portal. Even so, the statements in those communications warrant discussion here. The right-to-sue notice states that "[r]eceipt generally occurs on the date that you (or your representative) view[s]" the notice, ECF 4, at 15, and the enclosure with the notice states that "[r]eceipt generally means the date when you (or your representative) opened this email or mail," *id.* at 17. These advisements arguably conflict with the delivery rule and the Fourth Circuit's requirement that claimants "act expeditiously, without unnecessary delay" after receiving notice of a letter from the EEOC. *See Harvey*, 813 F.2d at 654. Under Fourth Circuit law, claimants may be deemed to have received the right-to-sue notice even if they have not opened the email or envelope or viewed the notice.

[10] This conclusion is consistent with the conclusions of other courts that a plaintiff received a right-to-sue notice on the day the EEOC emailed a link to the notice. *See, e.g.*, *Shields v. Verizon Maryland, LLC*, No. 1:23-CV-02932-JMC, 2024 WL 1050996, at *10 (D. Md. Mar. 11, 2024) ("[T]he 90-day window began to run" when "Plaintiff received an email from the EEOC . . . regarding a new document being added to his EEOC portal, regardless of when Plaintiff actually viewed that email . . . . This conclusion applies regardless of whether the email specifically indicated that a right to sue notice was uploaded to Plaintiff's EEOC portal or simply that there was *some* update available in his EEOC portal regarding his charge of discrimination."), *appeal dismissed*, No. 24-1317, 2024 WL 4531487 (4th Cir. May 17, 2024); *Ukor v. George Mason Univ.*, No. 1:23-CV-106 (PTG/JFA), 2023 WL 4976194, at *2 (E.D. Va. Aug. 3, 2023).

F.2d at 654 (rejecting equitable tolling argument when plaintiff still had 84 days to file his claim after he received actual notice of the right-to-sue letter); *Watts-Means*, 7 F.3d at 42 (equitable tolling "not appropriate" when plaintiff "still had eighty-five days . . . to file her claims" after she picked up the letter from the post office). Here, Hudson had 84 days from the day she discovered the notice on the EEOC Public Portal and forwarded it to her counsel. There are no grounds in the record for equitable tolling.

Because Hudson filed her lawsuit more than 90 days after she received the right-to-sue notice, WGLC is entitled to summary judgment on her Title VII and ADEA claims. *See Fisher v. Maryland Dep't of Hous. & Cmty. Dev.*, 32 F. Supp. 2d 257, 264 (D. Md.) (granting summary judgment for defendant when ADEA plaintiff filed suit more than 90 days after receiving right-to-sue notice), *aff'd*, 166 F.3d 1208 (4th Cir. 1998); *Harvey*, 813 F.2d at 653–54 (affirming summary judgment for defendant when Title VII plaintiff did not file suit within 90 days of receipt of right-to-sue notice).

**B. MFEPA Claims**

All that remains is Hudson's MFEPA claim, which neither party focused on in the briefing. When, as here, "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also* 28 U.S.C. § 1367(c)(3). The Court declines to exercise supplemental jurisdiction over this state law claim. Accordingly, the MFEPA claim in Count IV is dismissed without prejudice.

## V. Conclusion

For the foregoing reasons, WGLC's motion to dismiss, ECF 16, converted into a motion for summary judgment, IS GRANTED as to Counts I, II, and III. Count IV IS DISMISSED without prejudice. A separate order follows.

Date: September 30, 2026

Deborah L. Boardman
United States District Judge